UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 20-19 |
| RANDY JONAL SCHENCK | SECTION M (5) |

### ORDER & REASONS

Before the Court is a motion by counsel for defendant Randy Jonal Schenck, Bruce G. Whittaker, to withdraw and substitute counsel of record.[1] The United States of America (the "Government") responds in opposition.[2] The Court ordered supplemental briefing on the motion.[3] Both Schenck and the Government submitted such briefs.[4] The Court conducted a hearing on the motion on January 7, 2022.[5] Having considered the parties' memoranda and representations made at the hearing, the record, and the applicable law, the Court issues this Order & Reasons denying the motion for failure to show good cause.

### I.   BACKGROUND

This is Schenck's third motion to withdraw and substitute court-appointed counsel. On July 18, 2019, Arthur A. Lemann, III was appointed to represent Schenck in this case.[6] And on December 16, 2020, Schenck filed his first motion, which sought to withdraw Lemann as his attorney.[7] In that motion, Schenck asserted that Lemann was ineffective as counsel due to his

---

[1] R. Doc. 90. Although the motion was filed by Whittaker, the Court treats the motion as having been filed on Schenck's behalf because, as revealed at the hearing, it accords with his wishes.
[2] R. Doc. 91.
[3] R. Doc. 92.
[4] R. Docs. 93; 94.
[5] R. Doc. 95.
[6] R. Doc. 14.
[7] R. Doc. 73.

"failure" to provide Schenck with evidence of the crimes for which he was charged.[8] As a result, Schenck went on to say, he could not be "expect[ed] ... to consider a plea without having the necessary documents."[9] Further, Schenck claimed that Lemann was ineffective because he would not file certain motions as directed, including a motion "to ask the Court for more money to hire help for [Lemann] with [Schenck's] case."[10] The magistrate judge denied Schenck's motion.[11]

About four months later, on April 8, 2021, Lemann and his co-counsel filed the second motion to withdraw and substitute counsel citing, but not describing, "irreconcilable differences."[12] The Government did not file an opposition. The Court granted this motion and substituted Whittaker as counsel of record for Schenck.[13]

Now, Whittaker moves to withdraw as counsel of record – effectively Schenck's third such motion.[14] Trial in this matter is set for March 7, 2022.[15]

## II. PENDING MOTION

In his motion and supplemental briefing, Whittaker (essentially on Schenck's behalf)[16] argues that "irreconcilable differences" mandate his withdrawal.[17] For example, Whittaker asserts that Schenck "has expressed distrust in counsel's ability and motives, and has expressed the belief that counsel is working against his best interests."[18] Further, Whittaker argues that Schenck "makes clear" that he does not wish to engage in discussion about evidence and law because

---

[8] *Id.* at 1.
[9] *Id.*
[10] *Id.*
[11] R. Doc. 76 at 1.
[12] R. Doc. 82 at 2.
[13] R. Doc. 83.
[14] R. Doc. 90.
[15] R. Doc. 89.
[16] *See supra* note 1.
[17] R. Doc. 90 at 1.
[18] *Id.* at 2.

2

Whittaker will not file motions and make discovery requests as directed by Schenck.[19] As a result, all meaningful communication has become impossible, says Whittaker.[20]

In its opposition and supplemental briefing, the Government argues that Whittaker's withdrawal would result in "real and direct prejudice" to it in the form of unavailable witnesses, memory degradation, and other potential evidence loss.[21] Whittaker is "an experienced and able member of this District's Criminal Justice Act panel and a long-time officer of the Court," the Government observes; therefore, it says, Schenck's mistrust is "probably ill-founded."[22] The Government argues that if counsel were replaced, the likely result would be a need for a "significant" continuance to allow new counsel time to review the voluminous discovery, advise Schenck, and develop a defense strategy.[23] Any such continuance would necessarily entail further delay and uncertainty and would perpetuate the victimization of Schenck's victims, anticipated witnesses, and their families, warns the Government.[24] "It is time to proceed forward," the Government concludes, because "Schenck has had ample time and assistance of learned counsel to assess the evidence, decide whether he wishes to proceed [to] trial, and develop a strategy."[25]

### III. LAW & ANALYSIS

#### A. Right to Appointed Counsel

"The Sixth Amendment guarantees indigent defendants the right to appointed counsel, but it does not promise them the counsel of their choice." *United States v. Quinn*, 826 F. App'x 337, 341 (5th Cir. 2020) (citing *United States v. Mitchell*, 709 F.3d 436, 441 (5th Cir. 2013)), *cert.*

---

[19] R. Doc. 94 at 3-4.
[20] *Id.* at 4.
[21] R. Doc. 91 at 3.
[22] R. Doc. 93 at 3.
[23] R. Doc. 91 at 3.
[24] R. Doc. 93 at 4-5.
[25] *Id.* at 5.

*denied*, 141 S. Ct. 1434 (2021). And, while a defendant may not be entitled to choose appointed counsel, the Fifth Circuit has explained:

> A defendant is entitled to counsel capable of rendering competent, meaningful assistance in the preparation and trial of the pending charges, including appropriate evaluation and advice with reference to a plea of guilty. A defendant is not entitled to an attorney who agrees with the defendant's personal view of the prevailing law or the equities of the prosecutor's case. A defendant is entitled to an attorney who will consider the defendant's views and seek to accommodate all reasonable requests with respect to trial preparation and trial tactics. A defendant is entitled to appointment of an attorney with whom he can communicate reasonably, but has no right to an attorney who will docilely do as he is told. Every defendant is entitled to the assistance of counsel dedicated to the proposition, and capable of assuring that, the prosecution's case shall be presented in conformity with the Constitution, rules of evidence and all other controlling rules and practices. No defendant has a right to more.

*United States v. Moore*, 706 F.2d 538, 540 (5th Cir. 1983).

"A defendant is entitled to substitute appointed counsel only if he shows 'good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust verdict.'" *Quinn*, 826 F. App'x at 341-42 (quoting *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973)) (alteration omitted). The withdrawing attorney bears the burden of specifying and proving the existence of good cause for withdrawal. *See United States v. Austin*, 812 F.3d 453, 456 (5th Cir. 2016) (citing cases). "Unless there is a demonstrated conflict of interest, or counsel and defendant are embroiled in an irreconcilable conflict that is so great that it results in a total lack of communication preventing an adequate defense, there is no abuse of discretion in denying a motion to withdraw." *United States v. Contreras*, 2018 WL 10050318, at *1 (N.D. Tex. Sept. 6, 2018) (citing *United States v. Wild*, 92 F.3d 304, 307 (5th Cir. 1996)).

When withdrawal is based upon a conflict of interest, and the conflict "'springs not from multiple client representation but from a conflict between the attorney's personal interest and that

of his client,'" then the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies. *United States v. Gentry*, 941 F.3d 767, 776 (5th Cir. 2019*)* (quoting *Beets v. Scott*, 65 F.3d 1258, 1260, 1272 (5th Cir. 1995)). Pursuant to the *Strickland* standard, a defendant "'must show that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Id.* (quoting *Strickland*, 466 U.S. at 687)). "Mere disagreement about strategic litigation decisions is not a conflict of interest." *United States v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007). Moreover, an assertion that counsel did not file certain motions will not rise to the level of a conflict of interest absent an assertion of facts that justify the filing of such motions. *Austin*, 812 F.3d at 456.

When withdrawal is based upon a breakdown in communication, a "breakdown caused by a defendant's unwillingness to cooperate or communicate with her attorney generally does not justify appointment of new counsel." *Contreras*, 2018 WL 10050318, at *2 (citing *United States v. Simpson*, 645 F.3d 300, 307-08 (5th Cir. 2011)). "Neither is appointment of new counsel generally required where counsel continues to meet and communicate with a defendant whose complaints relate mainly to disagreement with counsel's trial strategy or who might, if she were an attorney or representing herself, prepare and try the case differently." *Id.* (citing *Romans*, 823 F.3d at 312-13, and *United States v. Hernandez*, 502 F. App'x 363, 367 (5th Cir. 2012)).

"The mere fact that a defendant is not satisfied with an attorney's performance does not qualify as good cause." *United States v. Jonas*, 824 F. App'x 224, 233 (5th Cir. 2020) (citing *United States v. Sarfraz*, 683 F. App'x 268, 269 (5th Cir. 2017)). Moreover, mistrust and dislike of appointed counsel is insufficient to warrant the substitution of counsel. *United States v. Romans*, 823 F.3d 299, 312 (5th Cir. 2016). "The freedom to have counsel of one's own choosing may not be used for purposes of delay," and "[l]ast minute requests are disfavored." *United States v. Silva*,

5

611 F.2d 78, 79 (5th Cir. 1980). "The withdrawal of an attorney in a given case is a matter entrusted to the sound discretion of the [district] court." *United States v. Conlan*, 786 F.3d 380, 390 (5th Cir. 2015) (quotation omitted).

### B. Analysis

This Court heard from all interested parties – Schenck, Whittaker, and the Government – at the January 7, 2022, hearing on the motion to withdraw. There, Schenck expressed his concerns regarding discovery issues and Whittaker's failure to file certain motions at his request. First, Schenck argued that Whittaker had not provided him with much relevant discovery regarding the charges for which he was indicted, despite repeatedly asking Whittaker to do so since the beginning of his representation. For example, Schenck noted that of 900 pages of discovery produced to him, only 10 pages were relevant to his case. Consequently, Schenck argued, he could not be expected to enter into a plea agreement without having the necessary evidence to make an informed decision. When asked by the Court to respond, Whittaker maintained that he has not withheld any evidence from his client. He explained that discovery is voluminous – there are approximately 160,000 Bates-stamped documents in the case – and that he has produced to Schenck all discovery that can be printed and that he has explained to him in detail all discovery that cannot. Whittaker indicated that he had brought hard drives and flash drives to the detention center to show Schenck the discovery that was in electronic form; however, the facility's rules prohibit Schenck from possessing such devices. Whittaker and the Government related that a three-way Zoom meeting had been conducted during which Schenck, his former counsel, and the Government utilized Zoom's screen-sharing function to review particular evidence, and that such a meeting can occur again with respect to any new evidence.

Second, Schenck insisted that Whittaker is ineffective as counsel because he refuses to file motions for the production of *Brady* material. After this Court's summary of the Government's obligation to provide *Brady* material, which may not require production on a defendant's timetable, Whittaker explained that no *Brady* material had been produced to him. Then the Government confirmed that there is no *Brady* evidence at present to produce. Undeterred, Schenck argued further that, like his previous counsel, Whittaker is ineffective because he refuses to file other, non-*Brady* motions as directed. Whittaker noted that none of these motions was advisable in his view. Despite Whittaker's attempts to continue to communicate and repair the impasse and his willingness to cooperate with Schenck, Whittaker explained that, as a result of their differences of opinion, Schenck will not discuss trial-related steps unless and until his requests have been fulfilled. But Schenck cannot manufacture a conflict of interest by disagreeing with his counsel on strategic litigation decisions. *Fields*, 483 F.3d at 353. Indeed, "[t]rial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) (quoting *Gonzalez v. United States,* 553 U.S. 242, 248 (2008)). Moreover, the law is clear that a criminal defendant is not entitled to "an attorney who agrees with the defendant's personal view of the prevailing law" nor "an attorney who will docilely do as he is told." *Moore*, 706 F.2d at 540. As was evident from the hearing, Whittaker's "refusal" to file particular motions amounts to trial strategy, an insufficient ground for appointment of new counsel. *See Contreras*, 2018 WL 10050318 at *2; *see also Jonas*, 824 F. App'x at 233 (holding that attorney's failure to file motions requested by criminal defendant and his dissatisfaction with attorney's performance did not constitute good cause for appointing substitute counsel); *Romans*, 823 F.3d at 312 (holding there

was not good cause for new counsel when defendant had complained that his lawyer "was not filing the motions that he wanted him to file").

As the Government acknowledges, Whittaker is a capable and respected attorney. This was conveyed to Schenck during the hearing, and the Court advised Schenck that if he gives Whittaker the chance, he will do a good job representing him. The Court noted, however, that if Schenck does not give Whittaker that chance, he will do the best he can, but his representation would be much better if Schenck were to cooperate with and listen to him. *See Gentry*, 941 F.3d at 777 (describing with approval a district court's similar statement to a criminal defendant seeking substitute counsel). When asked if he would continue to make every effort to communicate with and advise Schenck about his case, Whittaker readily agreed he would do so. In stark contrast, when asked if he would communicate and cooperate with Whittaker, Schenck said he would not and accused Whittaker of "lying." Based on the responses of Schenck, Whittaker, and counsel for the Government to the Court's questions at the hearing, the Court finds that Schenck's conclusory assertions – including that Whittaker has been lying to him, that Whittaker has refused to file motions necessary to his case, and that Whittaker is ineffective as counsel – are not credible. *See Romans*, 823 F.3d at 312-13 ("Although it is evident that [the defendant] mistrusted and disliked [his appointed counsel], there is no indication that there was a 'complete breakdown in communication' or an 'irreconcilable conflict' between the two, nor is there any evidence of a conflict of interest."). The breakdown in communication is due to Schenck's intransigence, not to any neglect on the part of defense counsel. *See Gentry*, 941 F.3d at 777 (observing that substitution of court-appointed counsel "'is inappropriate when the breakdown [in communication] can be attributed to the defendant's intransigence, and not to the neglect of defense counsel or the trial court'") (quoting *Simpson*, 645 F.3d at 308). Consequently, Schenck has failed to make the

requisite showing of good cause as would support Whittaker's withdrawal as counsel and the substitution of new appointed counsel.

## IV.    CONCLUSION

Accordingly, for the forgoing reasons,

IT IS ORDERED that Schenck's motion to withdraw and substitute counsel of record (R. Doc. 90) is DENIED for failure to show good cause.

New Orleans, Louisiana, this 11th day of January, 2022.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE