UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     CRIMINAL ACTION

VERSUS     NO. 20-19

RANDY JONAL SCHENCK     SECTION M (5)

## ORDER & REASONS

Before the Court are motions filed by defendant Randy Jonal Schenck to (1) withdraw his guilty plea[1] and (2) withdraw and substitute court-appointed counsel.[2] The United States of America (the "Government") responds in opposition.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying both motions.

**I.     BACKGROUND**

On May 10, 2022, Schenck pleaded guilty before the Court pursuant to a plea agreement under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure.[4] As part of the plea agreement, Schenck pleaded guilty to Counts 1 and 7 of the indictment in exchange for the dismissal of the remaining counts at sentencing.[5] Schenck's sentencing was then set for October 6, 2022.[6] On August 18, 2022, Schenck filed the instant motions.[7]

This is Schenck's fifth motion to withdraw and substitute court-appointed counsel. On July 18, 2019, Arthur A. Lemann, III was appointed to represent Schenck in this case.[8] On

---

[1] R. Doc. 130.
[2] R. Doc. 129.
[3] R. Doc. 133.
[4] *See* R. Docs. 119, 120, 121.
[5] *See* R. Docs. 27 at 5, 8; 121 at 1.
[6] R. Doc. 125.
[7] R. Docs. 129 at 1-2; 130 at 1-2.
[8] R. Doc. 14.

December 16, 2020, Schenck filed his first such motion, seeking to withdraw Lemann as his attorney.[9]  After hearing, the magistrate judge denied Schenck's motion.[10]  Approximately four months later, Lemann and his co-counsel filed a second motion to withdraw and substitute counsel, claiming "irreconcilable differences."[11]  The Government did not file an opposition.  The Court granted this motion and substituted Bruce G. Whittaker as counsel of record for Schenck.[12]  On December 22, 2021, Schenck filed a third motion to withdraw counsel,[13] which the Court denied, after hearing, for failure to show good cause.[14]  Within days, Schenck filed his fourth motion to withdraw counsel, his second as to Whittaker.[15]  As grounds for the one-page, handwritten motion filed on his own, without assistance of counsel, Schenck cited Whittaker's supposed "ineffectiveness."[16]  The Court denied Schenck's motion, having determined that it raised "[n]o new concerns" and thus lacked good cause.[17]  Schenck subsequently pleaded guilty on May 10, 2022.[18]  Over three months later, Schenck filed the instant motions to withdraw his guilty plea and to withdraw and substitute Whittaker.[19]

## II.   PENDING MOTION

Once again proceeding on his own, Schenck cites ineffective assistance of counsel as the basis for both of his two-page handwritten motions.[20]  He argues in both motions that (1) he had

---

[9] R. Doc. 73.
[10] R. Doc. 76 at 1.
[11] R. Doc. 82 at 2.
[12] R. Doc. 83.
[13] R. Doc. 90.
[14] *See* R. Docs. 95; 96.  In denying the motion to withdraw, the Court expressly found Whittaker to be "a capable and respected attorney."  R. Doc. 96 at 8.
[15] R. Doc. 98.
[16] *Id.* at 1.
[17] R. Doc. 101.
[18] R. Doc. 119 at 2.
[19] R. Docs. 129; 130.
[20] *See* R. Docs. 129 at 1-2; 130 at 1-2.

an inadequate amount of time to review the plea agreement and factual basis, and (2) Whittaker misrepresented the terms of, and pressured him into, the plea agreement.[21]

In opposition, the Government argues that Schenck's motions (1) fail to provide an adequate record – "choosing speculation over substance" – to support his positions,[22] and (2) fail under the Fifth Circuit's controlling standards for the revocation of a guilty plea and the withdrawal of counsel.[23] Specifically, the Government argues that the test for determining whether a defendant has shown a "fair and just reason" to withdraw a guilty plea favors denial.[24] Additionally, the Government argues that Schenck has failed to demonstrate the ineffectiveness of his attorney, Whittaker, so as to support his motion to withdraw counsel.[25]

### III. LAW & ANALYSIS

#### A. Withdrawal of Guilty Plea

"A defendant does not have an absolute right to withdraw [his] guilty plea." *United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003). Nevertheless, "[a] defendant may withdraw a guilty plea after the district court accepts the plea, but before it imposes a sentence, by showing a 'fair and just reason' for seeking withdrawal." *United States v. Strother*, 977 F.3d 438, 443 (5th Cir. 2020) (quoting Fed. R. Crim. P. 11(d)(2)(B)). The defendant bears the burden of establishing this reason. *Id.* To determine whether a defendant may withdraw a guilty plea, courts evaluate the following factors:

> (1) whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice if the withdrawal motion were granted; (3) whether the defendant delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether close assistance of

---

[21] R. Docs. 129 at 1-2; 130 at 1-2.
[22] R. Doc. 133 at 7.
[23] *Id.* at 7-18.
[24] *Id.* at 7-16.
[25] *Id.* at 17.

3

>counsel was available to the defendant; (6) whether the original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources.

*Id.* (citing *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984)).  "No single factor or combination of factors is dispositive, and the court must ultimately examine the totality of the circumstances."  *Id.*  The Court will examine each factor in turn.

### 1. Whether Schenck has asserted his innocence

Under the first *Carr* factor, "the defendant must not only assert his innocence, but also provide a 'substantial supporting record' for this assertion in order to support his motion to withdraw."  *Id.* at 444 (quoting *United States v. Clark*, 931 F.2d 292, 295 (5th Cir. 1991)).  Despite a defendant's assertion of innocence, "this claim alone is far from being sufficient to overturn denial of a withdrawal motion.  Otherwise, the mere assertion of legal innocence would always be a sufficient condition for withdrawal, and withdrawal would effectively be an automatic right."  *Carr*, 740 F.2d at 344.

In the case at bar, Schenck has admitted his guilt on numerous occasions, including to this Court while under oath.  Schenck admitted to his guilt when signing or initialing each page of the plea agreement.[26]  He did the same with the factual basis.[27]  During the rearraignment, Schenck repeatedly assured the Court, under oath, that he understood the charges to which he was pleading guilty and that he had committed the acts underlying the charges.[28]  Despite Schenck's brief hesitation concerning the factual basis at the rearraignment hearing, he reaffirmed, in response to the Court's specific inquiry and after conferring with counsel, that he understood the factual basis

---

[26] R. Doc. 121.
[27] R. Doc. 120.
[28] R. Doc. 133-2 at 35-36.

4

and that it was true.[29]  He then, for the third time during the rearraignment, confirmed that he was pleading guilty.[30]

"[T]he 'solemn declarations in open court' that accompany a guilty plea 'carry a strong presumption of verity.'" *United States v. Landreneau*, 967 F.3d 443, 450 (5th Cir. 2020) (quoting *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009)).  Thus, the Court assigns a "strong presumption of verity" to Schenck's sworn statements made in conjunction with his guilty plea.  Moreover, although he employs the terms "innocense," innocensent," and "innocents" [*sic*][31] in his motions, when read as a whole, especially in combination with correspondence he later sent the Court, Schenck does not clearly assert his factual or legal innocence as to all of the charges; rather, in his motions, Schenck only intimates that he could secure a verdict of not guilty as to some of the charges should he be allowed to withdraw his plea, retain different counsel, and go to trial.[32]  Indeed, the letter Schenck sent the Court, two months after pleading guilty, contradicts any assertion of innocence made in the instant motions and is more in line with the factual basis he signed and swore to this Court was accurate.[33]  In the letter, Schenck admits to many of the acts underpinning his charges, understatedly concluding that "those decisions I made are not a testament to me as a person."[34]  Because Schenck's post-plea motions simply invoke the term "innocence" as a talisman, without explanation or evidence, he has not provided a "substantial supporting record" to negate his numerous sworn admissions of guilt.  *Strother*, 977 F.3d at 444.

---

[29] *Id.* at 24, 29, 34-35.
[30] *Id.* at 35-36.
[31] R. Docs. 129 at 1; 130 at 1.
[32] *See* R. Doc. 126-1 at 1-2 (Schenck's July 28, 2022 letter to the Court).
[33] *Compare* R. Doc. 126-1 at 1-2 (Schenck's letter) *with* R. Doc. 120 (factual basis).  In the letter, Schenck appears to admit his guilt in the "theft[] and fraud scheme." R. Doc. 126-1 at 1.  This concession runs counter to the unsupported assertions made in the instant motions that he is innocent of at least some of the charges.  *See* R. Docs. 129 at 1; 130 at 2.
[34] R. Doc. 126-1 at 2.

5

Accordingly, the first *Carr* factor weighs in favor of denying his motion to withdraw the guilty plea.

### 2. Whether the Government would be prejudiced by withdrawal of the plea

The second *Carr* factor requires the Court to examine whether withdrawal of the plea would cause the Government to suffer prejudice. Schenck makes no argument in support of this factor.[35] Nevertheless, the Government details compelling examples of the prejudice it would suffer should the plea be withdrawn and the case proceed to trial.[36] Even if the Government had not done so, the Fifth Circuit has held that "[r]egardless of whether the Government would suffer prejudice, '*Carr* made clear that the absence of prejudice to the Government does not necessarily justify reversing the district court's decision to deny a motion to withdraw a guilty plea.'" *United States v. Lord*, 915 F.3d 1009, 1015 (5th Cir. 2019) (quoting *McKnight*, 570 F.3d at 649). Yet, here, the Court finds that the Government, after refocusing numerous law enforcement agencies, witnesses, and victims spread across the country away from trial preparation and towards plea negotiation, would be prejudiced in having now to reorient these resources back to trial. In addition, the trauma to Schenck's victims caused by his shifting positions on the plea also amounts to prejudice. Accordingly, the Court concludes that this factor weighs in favor of denying Schenck's motion to withdraw the guilty plea.

### 3. Whether Schenck delayed in filing his withdrawal motion

The third *Carr* factor requires considering whether – and to what extent – a defendant delayed in filing his withdrawal motion. Schenck waited more than three months after pleading guilty to file the instant motion to withdraw his plea. The Fifth Circuit has held that "'the longer

---

[35] The Court notes that Schenck's failure to address the second, third, fourth, and seventh *Carr* factors effectively "forfeit[s] any claim that the district court erred in weighing these factors in favor of the government." *Landreneau*, 967 F.3d at 451 (citing *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)).

[36] R. Doc. 133 at 10-12.

6

a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion.'" *Lord*, 915 F.3d at 1015 (quoting *Carr*, 740 F.2d at 344) (alteration omitted). Controlling precedent clearly demonstrates that a three-month delay is to be weighed against the defendant seeking a withdrawal. *See, e.g.*, *Strother*, 977 F.3d at 446-47 (holding that a three-month delay "constituted a significant delay that weighs against granting withdrawal"); *Landreneau*, 967 F.3d at 450-51 (same); *United States v. Harrison*, 777 F.3d 227, 237 (5th Cir. 2015) (holding that a five-week delay weighed against granting defendant's motion to withdraw plea); *Carr*, 740 F.2d at 345 (holding that a 22-day delay weighed against granting withdrawal).

Schenck provides no reasons to explain the three-month delay nor any evidence that he objected to the plea at any time prior to the filing of the motion. The letter Schenck sent the Court two months after his plea does not express doubt or regret as to his guilty plea.[37] To the contrary, in the letter, Schenck tries to explain why he engaged in the "theft[] and fraud scheme."[38] This is plainly insufficient to justify Schenck's delay in filing the withdrawal motion. The Court thus finds that this factor weighs against withdrawal of the plea.

### 4. Whether withdrawal of the plea would substantially inconvenience the Court

The fourth *Carr* factor asks whether the withdrawal would "substantially inconvenience the Court." Schenck does not address this factor in his motion. On the other hand, the Government argues that withdrawal would burden the Court's already busy docket in a case where significant resources have already been expended on an exhaustive rearraignment proceeding. The Court agrees. Accordingly, this factor weighs against granting Schenck's withdrawal motion.

---

[37] R. Doc. 126-1 at 1-2.
[38] *Id.* at 1.

### 5. Whether close assistance of counsel was available to Schenck

The fifth *Carr* factor involves determining whether the defendant received "close assistance of counsel." Schenck, in his motion to withdraw the guilty plea, appears to argue that his counsel, Whittaker, was ineffective, not that he was deprived of close assistance of counsel.[39] Regardless, the Government argues that Schenck received regular and competent advice from Whittaker as his attorney.[40] The Fifth Circuit has explained:

> Close assistance of counsel under Federal Rule of Criminal Procedure ("Rule") 11(d)(2)(B) and constitutionally ineffective assistance of counsel under the Sixth Amendment are distinct issues. The former is to be considered by a district court in the exercise of its discretion to allow or to disallow a defendant to withdraw his guilty plea. The latter presents a basis for invalidating a conviction (or sentence) secured in violation of a defendant's fundamental right to counsel. McKnight moved to withdraw his guilty plea under Rule 11(d)(2)(B). He has not sought to invalidate his conviction under the Sixth Amendment or any other provision of law. Thus, McKnight erred in framing his close assistance of counsel claim before the district court and this Court as a Sixth Amendment inquiry.

*McKnight*, 570 F.3d at 646. "Determining whether a defendant received close assistance of counsel requires a fact-intensive inquiry." *Id.* "Counsel's assistance may be close without being effective." *United States v. Urias-Marrufo*, 744 F.3d 361, 366 (5th Cir. 2014). In weighing this factor against withdrawal in another case, the Fifth Circuit observed that it has "previously found that close assistance of counsel was available where counsel negotiated a plea agreement, filed motions, discussed the case with the defendant, and explained the defendant's rights and the weight of the evidence, and where counsel was available throughout the proceedings and the defendant expressed satisfaction with counsel." *Strother*, 977 F.3d at 445 (citing *United States v. Benavides*, 793 F.2d 612, 613-18 (5th Cir. 1986), for the first proposition and *Lord*, 915 F.3d at 1015-16, for the second).

---

[39] R. Doc. 130 at 1.
[40] R. Doc. 133 at 13-14.

8

Here, the record demonstrates that Whittaker was accessible to Schenck throughout the proceedings.[41] Whittaker filed at least one evidentiary motion, which was granted;[42] filed motions to continue, which were granted;[43] and negotiated the plea deal with the Government, to which Schenck agreed.[44] Whittaker discussed the plea with Schenck ahead of the rearraignment hearing, and as the Court observed, he provided counsel to Schenck before, during, and after that hearing. Thus, close assistance of counsel was available to Schenck throughout the proceedings. When asked at the rearraignment whether he was "satisfied with the advice and services" received from Whittaker as his attorney, Schenck unequivocally answered in the affirmative.[45] Given the record (including the Court's own observations) and controlling precedent, this Court finds that the fifth *Carr* factor weighs against granting Schenck's withdrawal motion.

### 6. Whether the original plea was knowing and voluntary

The sixth *Carr* factor requires the Court to determine whether "the defendant's original plea was knowing and voluntary." *Strother*, 977 F.3d at 445. This is satisfied when the defendant has "a 'full understanding of what the plea connotes and of its consequence.'" *Urias-Marrufo*, 744 F.3d at 366 (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). "A guilty plea involves the waiver of constitutional rights, and thus must be 'voluntary, knowing, and intelligent.'" *Strother*, 977 F.3d at 455 (quoting *Lord*, 915 F.3d at 1016). When a defendant's motion to withdraw a guilty plea incorporates an ineffective-assistance-of-counsel claim, a court must evaluate the ineffectiveness claim because it is "inextricably tied" to whether the "guilty plea was knowing and voluntary." *Urias-Marrufo*, 744 F.3d at 365-66. An ineffective-assistance claim is

---

[41] Schenck's own motions demonstrate that Whittaker met with Schenck to discuss the content of the plea and its consequences. *See* R. Docs. 129; 130.
[42] *See* R. Docs. 104; 113.
[43] *See* R. Docs. 97; 100; 124; 125.
[44] R. Doc. 121.
[45] R. Doc. 133-2 at 35.

9

evaluated under the two-part test announced by the United States Supreme Court in *Strickland v. Washington*. *Id.* at 366 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, a court "first asks whether 'counsel's representation fell below an objective standard of reasonableness.'" *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)) (quotation marks omitted). The court then "asks 'whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Padilla*, 559 U.S. at 366) (quotation marks omitted). The Fifth Circuit has held that a plea was knowing and voluntary, despite an ineffective-assistance claim, where the defendant swore at the original plea hearing that (1) he understood the elements of each charge, (2) the factual basis was "entirely true and correct," (3) he was satisfied with his counsel's assistance, and (4) he did not make the plea under force, threat of force, coercion, or otherwise. *Strother*, 977 F.3d at 445-46.

As with the defendant in *Strother*, Schenck's "prior sworn statements at rearraignment are in tension with [his] ineffective assistance arguments." *Id.* at 446. In signing or initialing every page of the plea agreement in conjunction with his rearraignment, Schenck acknowledged, among other things, his awareness of the charges to which he was pleading guilty, the penalties he faced, and the waiver of his right to withdraw the plea should the Court deviate from the recommended sentencing range.[46] During the rearraignment hearing, Schenck again indicated under oath that he understood the elements of the charges against him.[47] He also affirmed that he was satisfied with his counsel's assistance and that he "had an ample opportunity to discuss" the case with Whittaker.[48] Schenck agreed further that the factual basis was true and that he was not being compelled or coerced to enter the plea.[49] Given Schenck's consistent and informed responses at

---

[46] R. Doc. 121 at 1-3.
[47] R. Doc. 133-2 at 32-35.
[48] *Id.* at 35.
[49] *Id.* at 32-33.

10

the rearraignment hearing, the Court found that his guilty plea was knowing and voluntary.[50] In his withdrawal motion, Schenck points to nothing that would alter this conclusion. Thus, this factor, too, weighs against withdrawal of the plea.

### 7. Whether withdrawal of the plea would waste judicial resources

The seventh *Carr* factor requires an examination of whether withdrawal would waste judicial resources. Again, Schenck does not address this factor. The Court finds that withdrawal of the guilty plea in this case would waste judicial resources, as significant resources have been expended already in preparing for and conducting the rearraignment proceeding. In addition, resources have been expended in preparing for Schenck's upcoming sentencing, which is set for October 6, 2022.[51] Moreover, as the Fifth Circuit observed in *Carr*, "denying a withdrawal motion when it would waste judicial resources 'protects the rights of other accused persons awaiting trial, whose cases may lose ... their position on the calendar ....'" *Carr*, 740 F.2d at 346 (quoting *Everett v. United States*, 336 F.2d 979, 984 (D.C. Cir. 1964)). This is no less true in Schenck's case. Thus, this factor also weighs against Schenck's withdrawal motion.

\* \* \* \*

In sum, weighing the totality of the circumstances, the Court finds that Schenck has failed to carry his burden of showing a "fair and just reason" for withdrawing his guilty plea. *See* Fed. R. Crim. P. 11(d)(2)(B).

### B. Withdrawal of Counsel

In what is now his fifth motion to withdraw and substitute counsel, Schenck argues that withdrawal is warranted because of ineffective assistance of counsel.[52] "The Sixth Amendment

---

[50] *Id.* at 33-36.
[51] R. Doc. 125.
[52] R. Doc. 129 at 1-2.

11

guarantees indigent defendants the right to appointed counsel, but it does not promise them the counsel of their choice." *United States v. Quinn*, 826 F. App'x 337, 341 (5th Cir. 2020) (citing *United States v. Mitchell*, 709 F.3d 436, 441 (5th Cir. 2013)), *cert. denied*, 141 S. Ct. 1434 (2021). And, while a defendant may not be entitled to choose appointed counsel, the Fifth Circuit has explained:

> A defendant is entitled to counsel capable of rendering competent, meaningful assistance in the preparation and trial of the pending charges, including appropriate evaluation and advice with reference to a plea of guilty. A defendant is not entitled to an attorney who agrees with the defendant's personal view of the prevailing law or the equities of the prosecutor's case. A defendant is entitled to an attorney who will consider the defendant's views and seek to accommodate all reasonable requests with respect to trial preparation and trial tactics. A defendant is entitled to appointment of an attorney with whom he can communicate reasonably, but has no right to an attorney who will docilely do as he is told. Every defendant is entitled to the assistance of counsel dedicated to the proposition, and capable of assuring that, the prosecution's case shall be presented in conformity with the Constitution, rules of evidence and all other controlling rules and practices. No defendant has a right to more.

*United States v. Moore*, 706 F.2d 538, 540 (5th Cir. 1983).

"A defendant is entitled to substitute appointed counsel only if he shows 'good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust verdict.'" *Quinn*, 826 F. App'x at 341-42 (quoting *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973)) (alteration omitted). The withdrawing attorney bears the burden of specifying and proving the existence of good cause for withdrawal. *See United States v. Austin*, 812 F.3d 453, 456 (5th Cir. 2016) (citing cases). "Unless there is a demonstrated conflict of interest, or counsel and defendant are embroiled in an irreconcilable conflict that is so great that it results in a total lack of communication preventing an adequate defense, there is no abuse of discretion in denying a motion to withdraw." *United States v. Contreras*, 2018 WL

10050318, at *1 (N.D. Tex. Sept. 6, 2018) (citing *United States v. Wild*, 92 F.3d 304, 307 (5th Cir. 1996)).

When withdrawal is based upon a conflict of interest, and the conflict "'springs not from multiple client representation but from a conflict between the attorney's personal interest and that of his client,'" then the standard set forth in *Strickland v. Washington* applies. *United States v. Gentry*, 941 F.3d 767, 776 (5th Cir. 2019) (quoting *Beets v. Scott*, 65 F.3d 1258, 1260, 1272 (5th Cir. 1995)). Pursuant to the *Strickland* standard, a defendant "'must show that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Id.* (quoting *Strickland*, 466 U.S. at 687)). "Mere disagreement about strategic litigation decisions is not a conflict of interest." *United States v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007).

When withdrawal is based upon a breakdown in communication, a "breakdown caused by a defendant's unwillingness to cooperate or communicate with her attorney generally does not justify appointment of new counsel." *Contreras*, 2018 WL 10050318, at *2 (citing *United States v. Simpson*, 645 F.3d 300, 307-08 (5th Cir. 2011)). "Neither is appointment of new counsel generally required where counsel continues to meet and communicate with a defendant whose complaints relate mainly to disagreement with counsel's trial strategy or who might, if she were an attorney or representing herself, prepare and try the case differently." *Id.* (citing *United States v. Romans*, 823 F.3d 299, 312-13 (5th Cir. 2016), and *United States v. Hernandez*, 502 F. App'x 363, 367 (5th Cir. 2012)).

"The mere fact that a defendant is not satisfied with an attorney's performance does not qualify as good cause." *United States v. Jonas*, 824 F. App'x 224, 233 (5th Cir. 2020) (citing *United States v. Sarfraz*, 683 F. App'x 268, 269 (5th Cir. 2017)). Moreover, mistrust and dislike of appointed counsel is insufficient to warrant the substitution of counsel. *Romans*, 823 F.3d at

13

312 . "The freedom to have counsel of one's own choosing may not be used for purposes of delay," and "[l]ast minute requests are disfavored." *United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980). "The withdrawal of an attorney in a given case is a matter entrusted to the sound discretion of the [district] court." *United States v. Conlan*, 786 F.3d 380, 390 (5th Cir. 2015) (quotation omitted).

      Schenck argues that withdrawal and substitution of Whittaker is warranted under the "fifth, sixth, and fourteenth amendments" due to ineffective assistance of counsel.[53] As grounds for his ineffective-assistance claim, he cites: (1) Whittaker's alleged misrepresentation of the proposed terms of the plea agreement and the inadequacy of time he had to review the agreement and factual basis, and (2) Whittaker's alleged pressure on him to accept the terms of the plea agreement.[54] Schenck's grounds are either contradicted by his own motions, not supported by the record, or both. First, in support of Schenck's bare assertion that the terms of the plea agreement contradicted Whittaker's representations of the same during a meeting they had before the rearraignment, Schenck provides notes purportedly given to him by Whittaker.[55] A comparison of these notes with the plea agreement ultimately entered into by Schenck demonstrates that Whittaker's description of what he expected to be the final plea agreement was spot on – namely, that Schenck would plead guilty to two of the 12 charges contained in the indictment and the Government would dismiss the remaining ten at sentencing.[56] Moreover, Whittaker swore under oath at the rearraignment hearing that he communicated to Schenck only an estimate of the applicable sentencing guidelines and the terms of the sentencing recommendation contained in the plea, not a promise or prediction of what the sentence would be.[57] Although Schenck claims that he was

---

[53] R. Doc. 130 at 1.
[54] R. Doc. 129 at 1-2.
[55] R. Doc. 129-1.
[56] *Id.*
[57] R. Doc. 134-2 at 34.

14

unable to see the final plea agreement and the factual basis until the morning of his rearraignment, his motion and the record show that he met with counsel the day before, met again the day of the rearraignment to review the final plea agreement and factual basis, and asked to recess the rearraignment hearing to discuss the agreement with his counsel.[58]  The Court did not pressure Schenck or his counsel to cut short their discussion or the recess.  Following the recess, and back on the record, when questioned by the Court whether he had "an ample opportunity" to discuss his case with Whittaker, Schenck answered that he had.[59]  Scheck also agreed under oath that he was satisfied with Whittaker's services as his lawyer.[60]  Accordingly, the Court concludes that Whittaker did not misrepresent the terms of the plea deal to Schenck and that both Whittaker and the Court provided adequate time for Schenck to review the plea agreement and the factual basis. *See Romans*, 823 F.3d at 312-13 ("Although it is evident that [the defendant] mistrusted and disliked [his appointed counsel], there is no indication that there was a 'complete breakdown in communication' or an 'irreconcilable conflict' between the two, nor is there any evidence of a conflict of interest.").

Second, Schenck alleges that Whittaker pressured him into accepting the plea agreement.  Schenck claims that Whittaker "intimidat[ed]" and "threaten[ed]" him by allegedly stating he would "get life" by proceeding to trial.[61]  Schenck also claims Whittaker "continued to use leverage" over him by allegedly informing Schenck that, if he did not plead guilty, his mother would be forced to appear for trial despite her ill health.[62]  Neither contention is supported by the record.  Schenck's bare assertion that Whittaker told him he would go to prison for life if he did

---

[58] *See* R. Docs. 129 at 1-2; 134-2 at 24, 29.
[59] R. Doc. 134-2 at 35.
[60] *Id.*
[61] R. Doc. 129 at 2.
[62] *Id.*

15

not plead guilty, even if accepted as true, actually reveals his attorney's reasonable assessment of a potential – and quite serious – outcome of Schenck's case, not pressure.[63] In assisting clients to understand a proposed plea, defense attorneys are frequently called upon to warn of possible outcomes, while simultaneously standing ready to provide a vigorous defense. This tension exists as to every plea and, absent any indication that Whittaker did not have Schenck's best interests in mind, Schenck's assertion of bad motive amounts to baseless speculation and is contradicted by all the other evidence of Whittaker's responsible performance of his duties. Similarly, the record is devoid of any support for Schenck's claim that Whittaker told him his mother would be forced to appear at trial – although this possibility was an appropriate consideration Schenck would have to weigh. Despite Schenck's belief that Whittaker "was helping the government mess over me,"[64] his naked assertions do not "'show that counsel's performance was deficient'" such "'that the deficient performance prejudiced the defense.'" *Gentry*, 941 F.3d at 776 (quoting *Strickland*, 466 U.S. at 687). To the contrary, and as this Court found before, Whittaker is a "capable and respected" attorney who negotiated a plea agreement with the Government on behalf of his client.[65] While Schenck asserts yet again (essentially for the third time) his distrust of Whittaker, "[m]ere discomfort with one's lawyer falls far short of the usual justifications that warrant a new one." *Quinn*, 826 F. App'x at 342 (citing *Romans*, 823 F.3d at 312-13). Because Schenck has not demonstrated ineffective assistance of counsel under *Strickland*, and because he has not otherwise shown good cause "such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict," his renewed request to withdraw Whittaker and substitute counsel fails once more. *Id.* at 341-42.

---

[63] At least one of the counts with which Schenck was charged in the criminal indictment carried a potential life sentence. *See* 18 U.S.C. § 1591(a)(1), (b)(1).
[64] R. Doc. 129 at 2.
[65] R. Doc. 96 at 8.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Schenck's motion to withdraw guilty plea (R. Doc. 130) is DENIED.

IT IS FURTHER ORDERED that Schenck's motion to withdraw and substitute counsel (R. Doc. 129) is DENIED.

New Orleans, Louisiana, this 14th day of September, 2022.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE