UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 20-19 |
| RANDY JONAL SCHENCK | SECTION M |

## <u>ORDER & REASONS</u>

Before the Court is defendant Randy Schenck's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1]  The United States of America ("the Government") responds in opposition,[2] and Schenck replies in further support of his motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court denies the motion.

## I.    BACKGROUND

On February 7, 2020, Schenck was charged by a grand jury with six counts of interstate transportation and use of an interstate facility with intent to carry on unlawful activity, in violation of 18 U.S.C. §§ 1952(a)(3) and 2; two counts of wire fraud, in violation of 18 U.S.C. § 1343; sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(a)(2), 1591(b)(1), and 1594(a); two counts of transportation of an individual to engage in prostitution, in violation of 18 U.S.C. § 2421; and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).[4]  On December 16, 2020, Schenck filed a *pro se* motion to withdraw his first

---

[1] R. Doc. 213.
[2] R. Doc. 215.
[3] R. Doc. 218.
[4] R. Doc. 27.  The indictment alleges that Schenck and his accomplice and co-conspirator, Dominique Berry, conspired to target prospective male victims through the placement of online advertisements that suggested the availability of commercial sex acts, and that, once a prospective target agreed to meet with Berry, she would lace an alcoholic beverage with drugs supplied by Schenck to incapacitate the victim, allowing her to steal valuables including credit and debit cards, which Schenck and Berry would subsequently use to make unauthorized purchases.  *Id.* at 2-4.

appointed attorney, Arthur A. Lemann III,[5] which was denied by the magistrate judge.[6]  In April 2021, only four months later, Lemann and his co-counsel filed a second motion to withdraw and substitute counsel due to "irreconcilable differences."[7]  The Court granted the motion and substituted Bruce G. Whittaker as Schenck's counsel.[8]  On December 22, 2021, Whittaker filed a motion to withdraw, also citing "irreconcilable differences."[9]  The Court held a hearing on the motion, and denied it for failure to show good cause.[10]  Less than one week after that hearing, Schenck filed a *pro se* motion to withdraw Whittaker as his counsel.[11]  The Court denied this motion for failure to show good cause, noting that it raised the same concerns as the previous motion to withdraw filed by Whittaker.[12]

As the case progressed toward trial, the Government and Whittaker, on Schenck's behalf, engaged in plea discussions.[13]  Ten days before the scheduled trial date, the Government moved to postpone all pretrial deadlines, indicating that Schenck and the Government had entered into a tentative plea agreement.[14]  The Court granted the motion in anticipation of a pretrial resolution and set a rearraignment hearing for May 10, 2022.[15]  At the rearraignment hearing, the Government presented to the Court a plea agreement, whereby Schenck agreed to plead guilty to Counts 1 and 7 of the indictment charging him with interstate travel or transportation in aid of racketeering enterprises and wire fraud, respectively, in exchange for dismissal of the remaining counts at sentencing and the Government's recommending a sentencing range of between 120 months and

---

[5] R. Doc. 73.
[6] R. Docs. 75; 76.
[7] R. Doc. 82.
[8] R. Doc. 83.
[9] R. Doc. 90 at 1.
[10] R. Docs. 95; 96.
[11] R. Doc. 98.
[12] R. Doc. 101.
[13] R. Docs. 213-3 at 6; 215-1 at 1.
[14] R. Doc. 117.
[15] R. Doc. 118.

300 months pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).[16]    During the plea colloquy, Schenck told the Court that he had no questions about the indictment, and that he understood the penalties he faced for Counts 1 and 7, the sentencing range recommended under Rule 11(c)(1)(B), that the Court was not bound to sentence him within that range, the advisory nature of the sentencing guidelines, and that the Court was not limited to considering only the facts set out in the factual basis in determining a sentence.[17]    The Court advised Schenck of the rights he would waive by pleading guilty, and described the elements of the offenses charged in Counts 1 and 7.[18]    Schenck indicated that he understood both the waiver and the charges and confirmed that he was pleading guilty because he "in fact, [did] the acts charged in Counts 1 and 7 of the indictment."[19]    Schenck told the Court no fewer than three times that he wished to plead guilty to Counts 1 and 7.[20]

The Government summarized the contents of the plea agreement and factual basis, authenticating each before tendering them to the Court.[21]    Whittaker then requested an opportunity to address a "question [Schenck had] about the factual basis."[22]    Whittaker spoke to Schenck for 30 seconds before informing the Court that they were "ready to go forward."[23]    However, when the Court asked Schenck whether he "underst[oo]d the Government's evidence as described in the Factual Basis and … agree[d] that [that was] what [he] did,"[24] Schenck answered, "[n]o, I don't

---

[16] R. Docs. 119 at 1; 121 at 1-2.
[17] R. Doc. 132 at 5-10.
[18] *Id.* at 10-12.
[19] *Id.* at 12-13 (quote at 12).
[20] *Id.* at 5, 10, 13, 35-36.
[21] *Id.* at 14-24.  Schenck affirmed under oath that he initialed and signed each page of the plea agreement, as did Whittaker and counsel for the Government, and that the agreement presented in Court "correctly state[d] the agreement between [himself] and the [G]overnment."  *Id.* at 18.  Schenck likewise affirmed that he had initialed each page and signed the final page of the factual basis.  *Id.* at 23-24.
[22] *Id.* at 24.
[23] *Id.*
[24] *Id.*

agree that's what I did."[25]  The Court stated that, because there was no "voluntary, willing, and valid plea," the case would go to trial the following Monday, as scheduled, and proceeded to address an outstanding pretrial motion.[26]  Thereafter, the Court commenced a *Frye* hearing as requested by the Government "to ensure that Mr. Schenck [was] aware of the terms of the [plea] offer."[27]  Whittaker then asked for another opportunity to confer with Schenck, which the Court allowed.  They spoke off the record for three minutes before the hearing resumed.[28]

After the Court explained the purpose of the *Frye* hearing and the Court's role,[29] Whittaker interjected to inform the Court that "Schenck wishe[d] to go through with the plea,"[30] explaining:

> In [Schenck's] – in defense of his position, we have been – it's not his fault.  I have not been able to spend sufficient time with him or as much time, I should say, as I would normally have spent with him today and yesterday with the documents.  He's, I think, done a good job with me working through the documents in the window that we've had and I request that the Court take that into account.  Indulge us.  Mr. Schenck does wish to go through with the guilty plea.[31]

---

[25] *Id.*

[26] *Id.* at 24-25.  On January 28, 2022, Schenck had filed a motion to exclude any reference to the death of S.A., one of Schenck and Berry's victims (R. Doc. 104), which the Court granted, reasoning that, although "the evidence [was] likely both relevant and intrinsic" to the elements of wire fraud, "evidence regarding the fact and timing of S.A.'s death is unfairly prejudicial such that the evidence must be excluded." R. Doc. 113 at 7.  However, the Court "reserv[ed] the right to take a different approach at trial."  *Id.* at 9 n.39.  Two weeks after the Court ruled on the first motion *in limine* regarding the death of S.A., Schenck filed a motion *in limine* to strike indictment surplusage concerning the death of S.A. (R. Doc. 114), which remained outstanding at the time of Schenck's rearraignment.  *See* R. Docs. 119; 132 at 25-29.

The Court construed the motion *in limine* to strike indictment surplusage concerning S.A.'s death (R. Doc. 114), especially given the Government's opposition (R. Doc. 115 at 3-4), as a motion to reconsider its previous ruling on Schenck's motion *in limine* to exclude references to the same subject (R. Doc. 104).  *See* R. Doc. 132 at 25.  After hearing arguments from the Government and the defense, the Court denied the motion and reversed its prior ruling, reasoning that "[t]he fact that S.A., who is a victim of this crime, who is specifically mentioned in the indictment, was a victim of the theft as a result of the incapacitation" would lead the jury to "wonder why that witness is not present," and, as such, an explanation "plac[ing] in context the evidence with respect to those witnesses who are unable to appear," subject to a carefully constructed limiting instruction, would be appropriate.  *Id.* at 28-29.

[27] R. Doc. 132 at 25, 29-31.

[28] *Id.* at 29.

[29] *Id.* at 29-31.

[30] *Id.* at 31.

[31] *Id.*

The Court questioned how it could "be sure that [the plea] is voluntary, knowing, and willing at this point," and Whittaker suggested that the Court ask Schenck directly.[32]  The Court proceeded to ask Schenck several times whether his plea was voluntary, knowing, and willing:

> THE COURT: … So I've asked all the questions up to this point in time and it seems to be that the hiccup here is what's described in the factual basis as the specific acts that Mr. Schenck is being asked to plead guilty to.  And so my very simple question, the factual basis, which you have read and signed and initialed all the pages describes the Government's evidence that would be presented at a trial, if they had an opportunity to go to trial, and this is just on Counts 1 and 7.  It doesn't include all the other counts, which we would go to trial on.  And my simple question was, do you agree that is what you did?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you do agree that those facts that are described in the factual basis are what you did?
>
> THE DEFENDANT: Yes.
>
> …
>
> THE COURT: … So you just responded to my question that you agree that the facts that are stated in the factual basis are what you did.  Are you agreeing voluntarily, willingly, and knowingly, Mr. Schenck?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Are you making a decision to plead guilty to Counts 1 and 7 of the indictment in a knowing, will, and voluntary fashion?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is anybody compelling you to do that?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: You know that you have the right to go to trial if you said I didn't want to plead guilty?  You understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: We have a trial scheduled.  We have all of the mechanics in place to go to trial.  So your right would be [e]ffected by going to trial.  Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And yet you want to plead guilty?

---

[32] *Id.*

THE DEFENDANT: Yes.[33]

The Court then addressed Whittaker, who confirmed that he had explained the charges in Counts 1 and 7 to Schenck, believed Schenck understood those charges, "had a full opportunity to investigate the facts and the law applicable to Mr. Schenck's case and to investigate any defenses that might apply," believed Schenck's guilty plea was made voluntarily and with full knowledge of the consequences, agreed with Schenck's decision to plead guilty, and had "made [no] representations to [Schenck] as to the sentence that the Court will impose other than explaining the applicable sentencing guidelines and the terms that are contained in the … Rule 11 plea."[34] Schenck also affirmed that he "had an ample opportunity to discuss [his] case with Mr. Whittaker as [his] counsel," and was "satisfied with the advice and services that [he] received from Mr. Whittaker as [his] counsel."[35] He again confirmed that he fully understood the charges against him and the consequences of his plea and that he was "pleading guilty because [he is], in fact, guilty."[36] The Court conditionally accepted Schenck's guilty plea pending review of his presentence investigation report and set a sentencing date.[37]

On August 18, 2022, just over three months after his rearraignment, Schenck filed another *pro se* motion to withdraw Whittaker as his counsel,[38] and a motion to withdraw his guilty plea.[39] In both motions, Schenck asserted that the plea-negotiating process was rushed and that Whittaker had misrepresented the terms of the final plea agreement and the contents of the factual basis before the rearraignment, told Schenck that the Court would not sentence him to more than 15 years in prison, and "intimidat[ed]," "manipulate[d]," and "threaten[ed]" Schenck to convince him

---

[33] *Id.* at 31-33.
[34] *Id.* at 33-34.
[35] *Id.* at 35.
[36] *Id.*
[37] *Id.* at 35-37.
[38] R. Doc. 129.
[39] R. Doc. 130 at 1.

to plead guilty during the rearraignment hearing.[40]  The Government opposed both motions.[41]  The Court denied the motions, reasoning that none of the seven *Carr* factors weighed in favor of withdrawal of his guilty plea[42] and that "Schenck ha[d] not demonstrated ineffective assistance of counsel under *Strickland* [nor] otherwise shown good cause" to withdraw Whittaker as his counsel.[43]  On October 6, 2022, having found Schenck to be the leader of the operation and that he used threats and acts of physical violence to force Berry into continued participation in his prostitution trafficking scheme, the Court sentenced Schenck to 300 months' imprisonment.[44]

On October 14, 2022, Schenck appealed his conviction and sentence to the Fifth Circuit, arguing that his plea was not knowingly and voluntarily entered and that the Court improperly participated in plea negotiations and abused its discretion in denying his motion to withdraw his guilty plea.[45]  The Fifth Circuit, applying plain-error review, affirmed Schenck's conviction and held that the Court did not abuse its discretion in denying Schenck's motion to withdraw his plea.[46]  Schenck now asks this Court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

---

[40] R. Doc. 129 at 2; *see also* R. Doc. 130.

[41] R. Doc. 133.

[42] R. Doc. 136 at 4-11.  The *Carr* factors, which courts weigh to determine whether a defendant may withdraw a guilty plea, *United States v. Nyandoro*, 2025 WL 2205980, at *3 (5th Cir. Aug. 4, 2025), include:

> (1) whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice if the withdrawal motion were granted; (3) whether the defendant delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources.

*United States v. Strother*, 977 F.3d 438, 443 (5th Cir. 2020) (citing *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984)).

[43] R. Doc. 136 at 16.

[44] R. Docs. 147; 148; 159 at 93-95, 98-99.

[45] R. Doc. 150; *United States v. Schenck*, 2024 WL 2369447, at *1-2 (5th Cir. May 23, 2024).  Schenck also appealed his sentence and court-ordered restitution.  These challenges were dismissed pursuant to the appeal waiver in Schenck's plea agreement.  *Schenck*, 2024 WL 2369447, at *2.

[46] *Id.* at *2-3.

## II.      LAW & ANALYSIS

### A.  Section 2255 Standard

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner serving a court-imposed sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence."  A narrow set of claims are cognizable on a § 2255 motion: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the statutory maximum; or (4) the sentence is "otherwise subject to collateral attack."  *Id.*  A claim of error that is neither constitutional nor jurisdictional is not cognizable in a § 2255 proceeding unless the error constitutes "'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

When a prisoner files a § 2255 motion, the district court must first conduct a preliminary review, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings for the U.S. District Courts, Rule 4(b).  But, if the motion raises a non-frivolous claim to relief, the court must order the government to file a response or take other appropriate action.  *Id.*  The judge may then require the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery.  *Id.* Rules 6-7.  Then, after reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials, the court must determine if an evidentiary hearing is warranted.  *Id.* Rule 8.  An evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  However, the court need not hold an evidentiary hearing if the prisoner fails to produce an "independent indicia

of the likely merit of [his] allegations."[47]  *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quotation omitted).

A § 2255 petitioner bears the burden of establishing his or her claims of error by a preponderance of the evidence.  *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).  Yet, courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel."  *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).  If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

### B.  Waiver

As oft stated by the Fifth Circuit, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief."  *United States v. Del Toro-Alejandre*, 489 F.3d 721, 722 (5th Cir. 2007) (quotation omitted).  The plea waiving such relief must be knowingly and voluntarily made and is not rendered involuntary simply because induced by "a plea bargaining situation."  *Gafford v. United States*, 438 F.2d 106, 107 (5th Cir. 1971).  But an ineffective-assistance-of-counsel argument survives such a waiver "when the claimed assistance directly affected the validity of that waiver or the plea itself."  *United States v. Crain*, 877 F.3d 637, 646 (5th Cir. 2017) (quotation omitted).  Here, Schenck's plea agreement contained a waiver of his right to collaterally challenge his sentence through a § 2255 petition, but specified that he retained the right to raise a claim of ineffective assistance of counsel in an appropriate proceeding.[48]

---

[47] Because the Court finds that Schenck's filings conclusively fail to demonstrate his entitlement to relief, the Court will not order an evidentiary hearing.  *See* 28 U.S.C. § 2255(b).

[48] *See* R. Doc. 121 at 3.

### C.  Ineffective Assistance of Counsel

"An ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *United States v. Owens*, 94 F.4th 481, 486 (5th Cir. 2024) (quotation omitted).  Claims for ineffective assistance of counsel are governed by the two-part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under *Strickland*, a defendant "must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense." *Owens*, 94 F.4th at 486.  Counsel's assistance is deficient if it "fell below an objective standard of reasonableness." *Id.* (quotation omitted).  Judicial scrutiny of counsel's performance is "highly deferential" and applies a "strong presumption" that counsel's assistance was reasonable. *See Strickland*, 466 U.S. at 689.  To meet the prejudice prong, a defendant "must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994).  Deficient assistance of counsel prejudices a defendant if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea," the prejudice inquiry "focuses on a defendant's decisionmaking." *Lee v. United States*, 582 U.S. 357, 364, 367 (2017).  Therefore, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 369.

"A failure to establish either deficient performance or resulting prejudice defeats the claim." *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).  "Thus, even where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction

should be upheld if the plea was voluntary.  In such a case there is no actual and substantial disadvantage to the defense." *DeVille*, 21 F.3d at 659 (quotation and alteration omitted).

### D. Analysis

Schenck currently asserts four grounds for relief.[49] The Court will address each of these grounds, and the Government's response to each, in turn.

### 1. Schenck claims that his trial counsel failed to review the factual basis with him.

Schenck first argues that Whittaker failed to adequately review the factual basis with him.[50] He notes that "[t]he requested conference between defense counsel and the defendant [during the *Frye* hearing] lasted two minutes and fifty six seconds,"[51] and reiterates assertions made in his motion to withdraw his plea, including "that he had not seen the factual basis" prior to the rearraignment hearing.[52]  He argues that "it is clear from the record and the exhibits attached to this motion and counsel's own admission in court that Mr. Whittaker did not take the brief recess to review the factual basis with [him]" and instead "utilized the recess to apply pressure to the defendant, to continue with the plea."[53]  He contends that, "[a]n attorney[']s failure to review a critical document such as the factual basis of a plea agreement is per-se deficient" and he was prejudiced by this deficiency because, had he had the opportunity to review the factual basis with his counsel, "he would not have accepted the plea and instead proceeded to trial."[54]

In its opposition, the Government argues that there is no support in the record for Schenck's assertion that he was unfamiliar with the terms of the plea documents or was coerced by his counsel

---

[49] Schenck's motion and original memorandum set fourth seven grounds for relief.  *See* R. Doc. 213 at 10-13; 213-2 at 21-27.  In his reply, Schenck concedes that "[t]he government[']s analysis of Grounds Five, Six, and Seven is correct," and he accordingly abandons those grounds, "with the caveat that such abandonment is not intended [to] and should not [a]ffect the [C]ourt[']s analysis of the remaining [four] grounds." R. Doc. 218 at 5.

[50] R. Doc. 213-2 at 14-17.

[51] *Id.* at 15.

[52] *Id.* at 16.

[53] *Id.* at 16-17.

[54] *Id.* at 17.

into signing them.[55]  It contends that "Schenck's statements under oath during the rearraignment – both before and after he said he disagreed with some (unspecified) portion of the Factual Basis – belie his claims."[56]

In reply, Schenck takes issue with the Government's reference to his statements during the plea colloquy because, says Schenck, "the Rule 11 colloquy itself and the events that occurred during said hearing … serve as the focal point of the instant proceedings and call into question the propriety and reliability of the Rule 11 colloquy as a whole."[57]  He argues that the general rule – that a defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath – is inapplicable here because his plea hearing was not "ordinary."[58]

The Court has already found in denying Schenck's motion to withdraw his plea that "both Whittaker and the Court provided adequate time for Schenck to review the plea agreement and the factual basis," observing that "the record show[s] that [Schenck] met with counsel the day before [the rearraignment], met again the day of the rearraignment to review the final plea agreement and factual basis, and asked to recess the rearraignment hearing to discuss the agreement with his counsel."[59]  However, Schenck submits with his motion a sworn affidavit stating that "[t]he first time the factual basis was read to [him] directly was when the judge read it to [him] and asked [him] if [he] agreed that it was what [he] had done."[60]  Even if Whittaker failed to review the factual basis with Schenck – and such failure was "per-se deficient," as Schenck baldly asserts[61] – Schenck  cannot show that he was prejudiced by that deficiency.

---

[55] R. Doc. 215 at 11.
[56] *Id.*
[57] R. Doc. 218 at 2.
[58] *Id.* at 3.
[59] R. Doc. 136 at 15.
[60] R. Doc. 213-3 at 3.
[61] R. Doc. 213-2 at 17.  But, notably, the Government submits Whittaker's affidavit in which he attests that he reviewed the factual basis with Schenck ahead of the hearing.  R. Doc. 215-1 at 3.

To have been prejudiced by Whittaker's purported failure to review the factual basis with him ahead of his rearraignment, Schenck's lack of knowledge of the contents of the factual basis must have been "*the* determinative factor" in his decision whether or not to plead guilty. *Lee*, 582 U.S. at 367 (emphasis in original). The record makes it clear that Schenck was aware of the contents of the factual basis when he entered his guilty plea. Prior to the three-minute recess, which Schenck argues Whittaker should have used to review the factual basis with him, the Government described the contents of the factual basis in detail to Schenck and the Court.[62] At this point, Schenck was unquestionably aware of the contents of the factual basis – including the portions he found objectionable. Nevertheless, after the recess, Schenck agreed under oath that "those facts that are described in the factual basis are what [he] did,"[63] and affirmed that he made that representation "voluntarily, willingly, and *knowingly*,"[64] and "had an ample opportunity to discuss [his] case with Mr. Whittaker as [his] counsel."[65] As the Government points out,[66] "'[s]olemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings,'" *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)), and thus, "a defendant ordinarily may not refute testimony given under oath at a plea hearing." *United States v. Gonzalez-Archuleta*, 507 F. App'x 441, 442 (5th Cir. 2013) (citing *Cervantes*, 132 F.3d at 1110).

Schenck argues that the declarations he made during the plea colloquy should not carry the presumption of verity accorded to sworn, in-court statements given that his version of events – in particular, his "initial refusal to agree with the factual basis[, Whittaker's] own statements that he

---

[62] *See* R. Doc. 132 at 21-23.
[63] *Id.* at 32.
[64] *Id.* at 32-33 (emphasis added).
[65] *Id.* at 35.
[66] *See* R. Doc. 215 at 10.

had not had sufficient time to review the 'documents' with [Schenck,] and the alleged off record coercion by counsel during the pause in the [R]ule 11 hearing" – "call[s] into question the propriety and reliability of the Rule 11 colloquy as a whole."[67]  He argues that the Government's position that he should be held to the statements he made, which he claims were "coerced" by counsel, "is a non-starter, as it would render any § 2255 proceeding essentially meaningless."[68]  To the contrary, permitting *post hoc* allegations unsupported by the record to overcome a petitioner's own contradictory declarations made on the record in open court would render plea colloquies meaningless.  "[D]ispositions by guilty plea are accorded a great measure of finality [because t]o allow indiscriminate hearings in federal postconviction proceedings … would eliminate the chief virtues of the plea system[:] speed, economy, and finality."  *Blackledge*, 431 U.S. at 72.  Recognizing that Schenck, like most prisoners, "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea," *id.*, he must still surmount the "formidable barrier" posed by his statements during the hearing.  *Cervantes*, 132 F.3d at 1110.  Schenck has provided no evidence that his statements after the recess were "coerced" by counsel[69] – in fact, he has abandoned his coercion argument.[70]  In any event, Schenck is not entitled to relief under this first ground, as he could not have been prejudiced by Whittaker's alleged failure to review the factual

---

[67] R. Doc. 218 at 2.  Schenck's assertion that Whittaker stated "that he had not had sufficient time to review the [plea] 'documents' with [Schenck]," *id.*, mischaracterizes the referenced statement, in which Whittaker clarified that he would "normally" have spent more time reviewing plea documents with a client than he was able to in this case.  R. Doc. 132 at 31 ("I have not been able to spend sufficient time with him *or as much time, I should say, as I would normally have spent with him* today and yesterday with the documents." (emphasis added)).  Whittaker also later confirmed that he "had a full opportunity to … advise [his] client" as to the facts of the case, applicable law, and any available defenses.  *Id.* at 34.

[68] R. Doc. 218 at 3.

[69] *See infra* note 120.

[70] *See* R. Doc. 218 at 5 (conceding to the Government's analysis of, and abandoning, *inter alia*, the fifth ground asserted in his memorandum, *viz.,* that Whittaker "misadvised and made misrepresentations of law(s) and fact(s) to [Schenck] in coercing him to enter a plea agreement" (R. Doc. 213-2 at 21)).

14

basis with him given that he was undoubtedly made aware of the contents of the plea agreement and factual basis before he entered his plea of guilty.

### 2. Schenck claims that his trial counsel failed to object to "pressure" from the Court.

Schenck's second asserted ground for relief is that Whittaker failed to raise a contemporaneous objection "to what appeared to be judicial pressure to continue with the plea" during his rearraignment – namely, the Court's reversal of its ruling to exclude references to the death of S.A. when it took up Schenck's motion to strike following Schenck's rejection of the factual basis.[71]  Schenck argues that he was prejudiced by Whittaker's failure to preserve this issue for appeal, resulting in plain-error review, because, if "the appellate court would have had the ability to review the issue through a lens[] much more favorable to the defendant [it] would have led to a reversal of [his] conviction."[72]

The Government, in response, argues that the assertion underlying this ineffective-assistance-of-counsel claim – that the Court participated in plea negotiations – is conclusory and unsupported by the record.[73]  The Government asserts that "[t]he Court went out of its way to do only what the law requires under Federal Rule of Criminal Procedure 11 and, when it appeared Schenck might not go through with pleading guilty, attending to necessary pre-trial matters," and argues that "the rearraignment transcript makes clear that the Court emphasized it would not and could not participate in plea negotiations."[74]  The Government also notes that, in its ruling on direct appeal, "[t]he Fifth Circuit has already concluded that the Court's reconsideration of a prior ruling did not meet the threshold for impropriety."[75]  For those reasons, argues the Government, "any

---

[71] R. Doc. 213-2 at 18.  *See supra* note 26.
[72] R. Doc. 213-2 at 18.
[73] R. Doc. 215 at 12.
[74] *Id.* at 13 (citing R. Doc. 132 at 10).
[75] *Id.* (citing *Schenck*, 2024 WL 2369447, at *1).

objection in the vein Schenck suggests would have been meritless [and c]ounsel cannot be deficient for, and prejudice does not result from, failing to raise a legally meritless claim."[76]

In reply, Schenck asserts that the Government incorrectly characterizes this ground as "claiming 'the court improperly participated in plea negotiations'" when Schenck actually argues that "counsel was ineffective for failing to object to what arguably appeared to be the district court's application of pressure upon the defendant."[77]  "This distinction is vital," says Schenck, "because it was counsel's lack of contemporaneous objection … that doomed the related appellate ground."[78]

"Counsel does not render ineffective assistance by failing to make a *meritless* objection." *United States v. Lopez*, 749 F. App'x 273, 276 (5th Cir. 2018) (emphasis added) (citing *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).  Thus, while there is a "distinction" between the argument that counsel was ineffective for failing to raise an objection and the merits of that objection, it is proper to address the merits of the objection Schenck claims Whittaker should have made in addressing this ineffective-assistance-of-counsel claim.  And, as the Government correctly concludes, such an objection would have been meritless.  This Court has already determined[79] – as did the Fifth Circuit on appeal[80] – that it did not apply "pressure" on Schenck to enter the plea agreement, or otherwise participate in plea negotiations, during the rearraignment hearing.  What Schenck argues "appeared to be judicial pressure" was the Court's reconsideration of its prior ruling on the admissibility of references to S.A.'s death upon taking up the defendant's own

---

[76] *Id.* (citing *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995)).

[77] R. Doc. 218 at 5 (emphasis omitted).

[78] *Id.*

[79] R. Doc. 136 at 15.

[80] *Schenck*, 2024 WL 2369447, at *1 ("Schenck has not shown the requisite clear-or-obvious error for whether the court's reversal of a prior ruling was 'predictive of the defendant's criminal-justice outcome; suggestive of the best or preferred course of action for the defendant; or indicative of the judge's views as to guilt.'" (quoting *United States v. Draper*, 882 F.3d 210, 215 (5th Cir. 2018), and citing Fed. R. Crim. P. 11(c)(1))).

successive motion *in limine* on the same subject and the Government's opposition to it.  At no point did the Court "suggest[] what should occur or inject[] comments while the parties [were] still negotiating."  *Draper*, 882 F.3d at 215-16.  In fact, after making the ruling in question, but prior to Schenck's entry of his guilty plea, the Court unequivocally explained that it "cannot get involved in any plea negotiations" nor offer "any opinion about [Schenck's] decision to reject or accept a plea offer or [his] decision to go to trial or not."[81]  And, far from pressuring Schenck to enter into the plea agreement, the Court took pains to ensure that Schenck understood that he could still choose to go to trial and that he was not being compelled by anyone to plead guilty.[82]  Because Schenck could not have been prejudiced by Whittaker's failure to raise a meritless objection, this ground also fails.

### 3. Schenck claims that his trial counsel failed to inform him of an initial formal plea agreement offered by the Government.

Third, Schenck asserts that Whittaker "fail[ed] to convey a beneficial formal plea offer" to him and instead unilaterally rejected it.[83]  He contends that this purported "formal plea offer" included an agreed-upon sentencing range of 120 to 240 months' imprisonment under Federal Rule of Criminal Procedure 11(c)(1)(C), which "undoubtedly would have led to a lesser sentence" and which he "would have accepted … absent [his] counsel[']s deficient performance."[84]

The Government counters that Schenck's assertion that Whittaker rejected a plea offer without first presenting it to Schenck is unreliable and "effectively unsupported."[85]  The

---

[81] R. Doc. 132 at 30-31.

[82] *Id.* at 31-33.

[83] R. Doc. 213-2 at 19.

[84] *Id.* at 20.  A court that accepts a Rule 11(c)(1)(C) plea agreement is bound by the sentencing range chosen by the parties and the defendant may withdraw his guilty plea if the court rejects the chosen sentencing range.  By contrast, a sentencing range recommended by the parties under a Rule 11(c)(1)(B) plea agreement is not binding on the court, and the defendant has no right to withdraw his guilty plea if the court does not follow the parties' sentencing recommendation.  Fed. R. Crim. P. 11(c).

[85] R. Doc. 215 at 14.

Government asserts that an email thread between Schenck and Whittaker attached to Schenck's motion[86] "reflects [that] Schenck was aware of the[se earlier] plea discussions, rejected the terms, and directed his counsel to convey his disinterest to the Government,"[87] and that the sworn affidavit of Whittaker attached to its opposition[88] "makes clear that the terms Schenck references in his motion (plea agreement with a sentencing range of between 120 and 240 months) were for unofficial discussion purposes only and never formally offered by the Government."[89]  The Government also argues that Schenck's claim is contradicted by his statements during the rearraignment hearing, including "that there were no other promises or agreements other than that contained in the document Schenck signed and that the parties presented to the Court" and "that he was 'satisfied with the advice and services' he[] received from his counsel."[90]

In reply, Schenck attacks the veracity of Whittaker's affidavit given that it is "from the individual at the heart of the pending § 2255 motion … who previously represented the petitioner and now seeks through affidavit to contradict [his] claims."[91]  He argues that Whittaker's assertion that Schenck "never express[ed] surprise or otherwise indicate[d] that he was unaware that a plea agreement had been rejected without his knowledge" is refuted by his May 9, 2022 email.[92]

The emails and affidavits of both Schenck and Whittaker make clear that no formal plea offer with the terms referenced by Schenck (a Rule 11(c)(1)(C) plea agreement with a 120-to-240-

---

[86] Schenck emailed Whittaker on May 9, 2022, asking Whittaker to see if the Government would agree to a sentencing range of up to 15 years under Rule 11(c)(1)(C).  R. Doc. 213-4 at 2.  He then states that "the deal was suppose[d] to be" a Rule 11(c)(1)(C) agreement with a range of 120-240 months, rather than a Rule 11(c)(1)(B) agreement with a 120-to-300-month sentencing recommendation, which was "not what [Whittaker] and [Schenck] discussed" and was "not a fair plea deal."  *Id.*  Whittaker responded: "they [the Government] withdrew the 10 to 20 [year Rule 11(c)(1)(C) offer] when we said no[. T]he … 120 to 240 [month range] – that is what we said no to.  [T]he new deal is 10 to 25 [years] – which is 120 to 300 [months]."  *Id.*

[87] R. Doc. 215 at 14.

[88] R. Doc. 215-1.

[89] R. Doc. 215 at 15.

[90] *Id.* (quoting R. Doc. 132 at 20, 35).

[91] R. Doc. 218 at 1.

[92] *Id.*

month sentencing range[93]) was ever made, and Whittaker therefore could not have independently rejected such an offer.  In his affidavit, Whittaker's states that he and counsel for the Government had "preliminary" discussions regarding a potential Rule 11(c)(1)(C) plea agreement with a recommended sentencing range of 120 to 240 months in April 2022.[94]  He states that these preliminary terms had not yet been "authorized by senior management in the United States Attorney's Office," and would not be submitted for such authorization unless Schenck first indicated that he would accept them.[95]  Whittaker also states that he relayed these terms to Schenck, explaining that they "were only preliminary" and that any formal offer was contingent an Schenck's acceptance of the terms.[96]  Whittaker says he "encouraged [Schenck] to authorize [him] to convey [Schenck's] desire to enter into a plea consistent with those terms" to the Government, but "Schenck was adamant that he was not interested in entering a guilty plea" with those terms and would not accept any offer with a term of imprisonment over 15 years.[97]  This comports with Whittaker's response to Schenck's email explaining that "they [the Government] withdrew the 10 to 20 [year sentencing range] *when we said no.*"[98]

Schenck's affidavit does not address any events prior to the May 9, 2022 email exchange. He states that he was "requesting and expecting to be offered" a plea agreement consistent with the "preliminary" terms when he emailed Whittaker, and that Whittaker's response "was the first and only time [he] was informed … that a plea agreement of '120-240' [months] had been *formally* offered," and that, had he known that such an offer "had, in fact, been *formally* offered, [he] would have accepted [it] without hesitation."[99]  But Schenck points to no evidence that any such formal

---

[93] R. Doc. 213-4 at 2.
[94] R. Doc. 215-1 at 1.
[95] *Id.*
[96] *Id.* at 1-2.
[97] *Id.* at 2.
[98] R. Doc. 213-4 at 2 (emphasis added).
[99] R. Doc. 213-3 at 2 (emphasis added).

offer was ever extended.  In fact, while Schenck argues in reply that there are "disputed dispositive factual issues regarding [a]ttorney/[c]lient communications,"[100] he notably does not deny – and nothing in his own affidavit or the record contradicts – Whittaker's attestation that Schenck was "adamant that he was not interested in entering a guilty plea that included a term of imprisonment of between 120 months and 240 months" when Whittaker initially relayed these preliminary terms to him and explained that any official offer was contingent on his acceptance of the terms.[101]  This is *the* "dispositive factual issue."  Even accepting Schenck's unfounded claim that Whittaker withheld an official offer from him, he must still demonstrate prejudice.  The prejudice inquiry "focuses on [the] defendant's decisionmaking," *Lee*, 582 U.S. at 367, and the Government has provided uncontroverted "contemporaneous evidence [of Schenck]'s expressed preferences," *id.* at 369, in the form of Whittaker's declaration that Schenck "adamant[ly]" rejected the terms that he now claims Whittaker "rejected … of [his] own volition."[102]  Because Schenck has made no showing that Whittaker failed to relay a formal plea offer to him, much less rejected one without consulting him – and could not demonstrate prejudice if he did – Schenck is not entitled to relief on this ground.

---

[100] R. Doc. 218 at 2.  Schenck frames this as a case of dueling affidavits, arguing that "[c]ontested factual issues may not be decided on the basis of [a]ffidavits alone."  *Id.* (citing *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir 1981)).  However, notwithstanding that Schenck does not actually contest the Government's evidence that he rejected the preliminary terms, the Court need not make any decisions based on the affidavits alone, because there is record evidence beyond the affidavits that also belies Schenck's claim that Whittaker withheld or rejected any formal plea offer – namely, Schenck's own statements under oath that there were no other promises or agreements other than that contained in the document Schenck signed and that the parties presented to the Court and that he was "satisfied with the advice and services" he received from Whittaker.  R. Doc. 132 at 20, 35.  *See, e.g., United States v. Barajas*, 2024 WL 4973303, at *2 (5th Cir. Dec. 4, 2024) (holding that the district court did not abuse its discretion in denying evidentiary hearing on a § 2255 motion where "the record … did not consist only of the dueling affidavits [but t]here was ample evidence in the record beyond the affidavits … including testimony from the prior hearing on [counsel's] motion to withdraw and [the petitioner]'s own statements at her rearraignment hearing") (citing *United States v. Jolley*, 252 F. App'x 669, 670-71 (5th Cir. 2007); *Cervantes*, 132 F.3d at 1108, 1111).

[101] R. Doc. 215-1 at 2.

[102] R. Doc. 213-2 at 20.  To the extent Schenck was still "expecting to be offered" any formal plea agreement with those terms when he emailed Whittaker on May 9, 2022, R. Doc. 213-3 at 2, he evidently disregarded Whittaker's warning "that no plea resolution would be official or final until he would accept the terms and authorize [Whittaker] to convey his desire for those terms to the federal prosecutors."  R. Doc. 215-1 at 1-2.

### 4. Schenck claims that his counsel deceived him into pleading guilty.

Schenck argues that his guilty plea "was not knowingly and voluntarily entered as it was obtained as a result of deceit from counsel"[103] because, he says, Whittaker "deceived [him] into believing the factual basis and the potential omissions in the factual basis would prohibit the [Government] from seeking enhancement[s] relative to the omitted actions in the Factual Basis."[104] He also alleges for the first time that Whittaker forged his signature on the factual basis.[105]

The Government argues that Schenck's "broad, general allegations" that he was deceived into signing the plea documents by his counsel and that his counsel forged his signature and initials on same are "readily disproved by the rearraignment transcript,"[106] which reflects that Schenck stated that he understood that the Court was not limited to considering only the facts set out in the factual basis for purposes of sentencing, but could consider "any and all 'relevant conduct' that the defendant was involved in," and that "Schenck confirmed multiple times that he had initialed or signed all pages of the plea materials."[107]

Aside from his general objection to the Government's reliance on Schenck's statements under oath at the rearraignment hearing,[108] which the Court has already addressed,[109] he does not reply to the Government's arguments with respect to this ground.

Schenck's claim that he believed "that the agreed upon factual basis prohibited the [G]overnment from seeking enhancements relative to conduct not articulated in the 'factual basis'" and that he was not aware "that conduct that would subsequently be described in a [p]re-sentence

---

[103] R. Doc. 213-2 at 20.

[104] *Id.*

[105] *Id.* Schenck did not include any allegations of forgery in his post-rearraignment motion to withdraw counsel or his motion to withdraw his plea. *See* R. Docs. 129; 130. In fact, he stated that he "was coerced into signing" the factual basis. R. Doc. 129 at 2.

[106] R. Doc. 215 at 16.

[107] *Id.* (citing R. Docs. 121 at 3; 132 at 9-10, 17, 23-24).

[108] R. Doc. 218 at 2-3.

[109] *See supra* pp.13-14.

[investigation] report that was omitted from the factual basis could be used as a reason to enhance [his offense level under the] sentencing guidelines"[110] is once again plainly disproved by the transcript of the rearraignment hearing. Schenck confirmed under oath that he "underst[oo]d that in determining [his] sentence the Court [was] not limited to considering only those facts set forth in any factual basis that [he] may have signed in connection with [his] decision to plead guilty."[111] The Court also specifically advised Schenck that it "may consider factual information set forth in a presentence investigation report that will be prepared by the United States Probation Office," and Schenck again confirmed under oath that he understood this.[112] Thus, even if Whittaker failed to accurately explain these sentencing considerations to Schenck, the Court did, and Schenck expressed that he understood them prior to pleading guilty. He therefore cannot demonstrate that he was prejudiced by any "deception" by Whittaker as to the impact of the factual basis or presentence investigation report on the Court's sentencing determination. Deception, then, fails as a ground for relief. Furthermore, Schenck provides no evidence for his claim that Whittaker "forged" his signature and initials on the factual basis, aside from his self-serving declaration that he "never signed or initialed any 'factual' basis."[113]  Yet, this claim is also contradicted by Schenck's own statements under oath at his rearraignment hearing. When counsel for the Government asked Schenck whether he had signed and initialed the factual basis, he answered in the affirmative.[114]  Thus, Schenck's assertion that his counsel forged his signature also fails as a ground for relief.

---

[110] R. Doc. 213 at 8.
[111] R. Doc. 132 at 9.
[112] *Id.* at 9-10.
[113] R. Doc. 213-3 at 3.
[114] R. Doc. 132 at 23-24.

**5.  Schenck claims that his trial counsel coerced him into pleading guilty.**

The fifth asserted ground in Schenck's motion and original memorandum is that Whittaker "misadvised and made misrepresentations of law(s) and fact(s) to [Schenck] in coercing him to enter a plea agreement."[115]  Schenck asserts that Whittaker made "inferred threats" including that "[Schenck's] mother would be subjected to prosecution or arrest if unavailable to testify" and that "he would receive a harsher sentence" if he went to trial.[116]  But for Whittaker's "dishonesty, fraud, deceit and/or misadvise [and] misrepresentation(s)," Schenck says he would not have pleaded guilty.[117]

The Government contends that Schenck's claim that "his plea was obtained by misadvice and misrepresentations" also must fail,[118] as his counsel's purported statement that Schenck could get a life sentence if he proceeded to trial "was entirely accurate" and "reasonable advice that benefitted, rather than prejudiced, Schenck."[119]

Schenck "abandons" this issue in his reply, as he correctly concedes that the Government's analysis as to this ground is correct.[120]

---

[115] R. Doc. 213-2 at 21.

[116] *Id.*

[117] *Id.* at 22.

[118] R. Doc. 215 at 17 (emphasis and internal quotation marks omitted).

[119] *Id.* at 17-18.

[120] R. Doc. 218 at 5.  As this Court already recognized in denying Schenck's motion to withdraw his guilty plea, Whittaker's purported statement to Schenck during the recess that Schenck could be sentenced to life in prison if convicted by a jury was a "reasonable assessment of a potential – and quite serious – outcome of Schenck's case, not pressure" to plead guilty.  R. Doc. 136 at 16.  "'A defense attorney should make informed predictions about the consequences of either pleading guilty or going to trial.'"  *United States v. Stanton*, 2025 WL 1207184, at *2 (E.D. La. Apr. 25, 2025) (quoting *United States v. Cothran*, 302 F.3d 279, 284 (5th Cir. 2002)).  Even where defense counsel warns that his client "would almost certainly lose at trial and face a harsh sentence, these [are] warnings, not threats." *Cothran*, 302 F.3d at 284.  To the extent Whittaker told Schenck that his mother may be compelled to testify at a trial, this also amounts to a warning, not a threat, and, as the Court has noted, "was an appropriate consideration Schenck would have to weigh" in deciding whether to go to trial.  R. Doc. 136 at 16.  And, once again, this claim is belied by Schenck's statements at his rearraignment hearing: after the recess, Schenck denied under oath that "anybody [was] compelling" him to plead guilty.  R. Doc. 132 at 33.

**6. Schenck claims that the Court violated his right to counsel by denying his motion to dismiss Whittaker as his counsel without a hearing.**

In his motion and original memorandum, Schenck contends that the Court violated his Fifth and Sixth Amendment rights "to conflict-free [and] effective counsel" by denying his *pro se* motion to dismiss Whittaker without a hearing.[121] He argues that he has "establishe[d] that [his] counsel and himself had conflict between each other" and "has proven [Whittaker] to be ineffective more than once."[122] He further claims that, had the Court granted his motions to withdraw his counsel, Schenck "would have been afforded another lawyer that would have reviewed issue(s) surrounding plea agreement(s) [and] negotiation(s) … through a lens[] much more favorable to [Schenck] which would have led to a reversal of [his] conviction allowing him to proceed to trial."[123]

The Government argues that, although this argument is "identical to those he raised in prior pleadings," Schenck failed to raise it on direct appeal, and it is thus procedurally defaulted.[124]

Schenck also abandons this argument in reply, thereby conceding that it is procedurally barred.[125]

**7. Schenck claims that his trial counsel committed fraud upon the Court.**

Schenck included a seventh ground in his motion and memorandum, asserting that Whittaker violated his rights to counsel by "commit[ing] fraud upon the Court" by "manipulat[ing]

---

[121] R. Doc. 213-3 at 24.

[122] *Id.* at 23-24.

[123] *Id.* at 25.

[124] R. Doc. 215 at 18.

[125] R. Doc. 218 at 5. "When a defendant fails to raise a claim on direct review, that claim is usually procedurally barred in collateral proceedings." *United States v. Cuff*, 79 F.4th 470, 476 (5th Cir. 2023) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Exceptions to this procedural bar include ineffective-assistance-of-counsel claims – like the remainder of Schenck's stated grounds for relief – or where the movant can demonstrate both cause and prejudice. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Here, Schenck did not raise this argument on direct appeal and does not attempt to show cause for this procedural default. Thus, as Schenck effectively concedes, this argument is procedurally barred.

and deciev[ing Schenck] regarding the factual basis and [whether] any potential omissions in it would prohibit the [G]overnment from seeking … enhancements relative to the omitted allegations," forging Schenck's initials and signature on the plea agreement and factual basis, and "us[ing] the recess to apply pressure" to Schenck to plead guilty and to "distract" him from the alleged forgery.[126]

The Government notes that this argument "regurgitates prior arguments," namely, Schenck's fourth asserted ground for relief, and should thus fail for the same reasons articulated by the Government as to that ground.[127]

Schenck concedes that the Government's analysis as to this ground is correct and abandons it, too.[128]

### E.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Schenck's § 2255 motion (R. Doc. 213) is DENIED.

New Orleans, Louisiana, this 13th day of August, 2025.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[126] R. Doc. 213-3 at 25-27.

[127] R. Doc. 215 at 19.

[128] The Government correctly observes that Schenck recites the same allegations in support of this ground as for his fourth ground for relief.  The Court agrees, and it has already rejected Schenck's arguments that Whittaker deceived and pressured him into signing the plea documents and that Whittaker forged his signature on the plea documents. *See supra* § II(D)(4).